IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

LOOKOUT WINDPOWER HOLDING )
COMPANY, LLC, et al., )
)
       Plaintiffs, )
)
vs. ) Case No. 08-6128-CV-SJ-GAF
)
EDISON MISSION ENERGY, et al., )
)
       Defendants. )

## ORDER

Pending before the Court is Edison Mission Energy, et al.'s ("Defendants") Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction and Improper Venue. (Doc. #32). According to Defendants, Plaintiffs Lookout Windpower Holding Company, LLC, et al. ("Plaintiffs") demonstrate Defendants had only one relevant but inconsequential and fortuitous contact with Missouri in relation to Plaintiffs' claims. (Doc. #33). Plaintiffs allege Defendants had multiple contacts with Missouri that are directly related to their claims and that jurisdiction over Defendants would thus comport with due process standards and the requirements of Missouri's long-arm statute. (Doc. #50). For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED.

## DISCUSSION

**I.    Standard**

When a defendant controverts or denies the jurisdictional facts alleged in a plaintiff's complaint, the plaintiff has the burden to prove the facts alleged. *Mountaire Feeds, Inc. v. Agro Impex, S. A.*, 677 F.2d 651, 653 (8th Cir. 1982) (*citing Aaron Ferer & Sons Co. v. Diversified Metals*

1

*Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977)). However, if no hearing is held on the motion and the court relies on pleadings and affidavits, the facts must be viewed in the light most favorable to the nonmoving party. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991) (*citing Watlow Elec. Mfg. v. Patch Rubber Co.*, 838 F.2d 999, 1000 (8th Cir.1988)). "[T]he nonmoving party need only make a prima facie showing of jurisdiction," and "the court must "resolve all factual conflicts in favor of that party." *Id.* (*citing Watlow*, 838 F.2d at 1000 *& Nieman v. Rudolf Wolff & Co., Ltd.*, 619 F.2d 1189, 1190 (7th Cir. 1980)). "The plaintiff's 'prima facie showing' must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (*quoting Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)).

**II.     Analysis**

*A.     The Parties*

Plaintiff Lookout Holding ("Lookout Holding MO") is a Missouri limited liability company with members residing in Arizona, Kansas, and Connecticut. (Am. Compl. ¶1). Plaintiff FreeStream is a Delaware limited liability company with its members residing in Texas and England. *Id.* at ¶2. Defendants Edison, Mission Wind, Mission Wind Two, and Mission Wind Three are Delaware corporations with their principal places of business in Irvine, California. *Id.* at ¶¶3-6. Defendant Lookout Windpower is a Delaware limited liability company. *Id.* at ¶7.

Representatives of some of the parties involved here began their interactions related to the present dispute in 2004. In November 2006, as part of a series of interactions that culminated in a Redemption Agreement and Security Agreement around March of 2007, Randolph Mann ("Mann") and Eric Luesebrink ("Luesebrink") , representatives of Defendants Edison and Mission Wind, flew

2

to Kansas City, Missouri on the evening November 9, 2006 and had dinner with Bob Gardner ("Gardner") and Bill Stevens. The next day, Mann and Luesebrink attended a meeting at an airport hotel where they were involved in negotiations for approximately half the day regarding two wind farm projects in Pennsylvania. Mann and Luesebrink then flew back to California. Although Plaintiff Lookout Holding MO had not been formed at the time of this meeting, Plaintiffs allege all parties to the meeting were aware of its pending formation as part of the transactions under negotiation.[1] Plaintiffs allege the Defendant entities, through Luesebrink and Mann, either participated in the negotiations culminating in the Redemption Agreement and Security Agreement or were formed as part of the preparation or performance of the Agreements. Additionally, funds were wired to a Missouri bank by Edison and Plaintiffs allege Defendants exchanged additional Missouri-related communications with Plaintiffs.

*B.     Jurisdictional Analysis*

"The federal court in a diversity case must determine whether [the] defendant is subject to the court's jurisdiction under the state long-arm statute, and if so, whether exercise of that jurisdiction comports with due process." *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998) (*quoting Moog World Trade Corp. v. Bancomer, S.A.*, 90 F.3d 1382, 1384 (8th Cir.1996)).

---

[1] Defendants state "[i]t is not clear whether Lookout Holding PA or Lookout Holding MO is party to the Redemption Agreement." (Doc. #33, p. 2). Construing the facts in the light most favorable to Plaintiffs, the Court will assume Lookout Holding MO was a party to the Redemption Agreement as Plaintiffs contend.

3

C.  *Long-Arm Statute*

With respect to tort or contract-related claims, Missouri's long-arm statute authorizes jurisdiction over any person or entity that engages in any of the following acts either personally or through an agent when the cause of action arises out of the act: "(1) [t]he transaction of any business within this state; (2) [t]he making of any contract within this state; [or] (3) [t]he commission of a tortious act within this state." Mo. Rev. Stat. § 506.500. "Missouri courts have interpreted the statute broadly to cover those cases where the Due Process Clause permits the assertion of personal jurisdiction." *Clune v. Alimak AB*, 233 F.3d 538, 541 (8th Cir. 2000) (*citing State v. Wiesman*, 627 S.W.2d 874, 876 (Mo. 1982) (en banc)).

"A single business proposal to a Missouri corporation has been found sufficient to constitute the transaction of business." *Chromalloy Am. Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1, 4-5 (Mo. 1997) (citation omitted).[2] *See also Johnson Heater Corp. v. Deppe*, 86 S.W.3d 114, 119 (Mo. Ct. App. 2002) ("[T]he 'transaction of any business' is construed broadly and may consist of a single transaction if that transaction gives rise to the suit.") (*citing State ex rel. Nixon v. Beer Nuts, Ltd.*, 29 S.W.3d 828, 834 (Mo. Ct. App. 2000)). While there is no general requirement that a Missouri resident be present at any particular time in the events leading up to a dispute, *see Sloan-Roberts v.*

---

[2]Plaintiffs contend *Chromalloy* is controlling and on all fours with this case. However, in that case, the nonresident defendant made more than one trip to Missouri and the court found the trips were purposeful visits made with the intention of purchasing an asset from a Missouri corporation then in existence. *Chromalloy*, 955 S.W.2d at 5. Further, it appears in that case that "[l]ong distance communications between [the Missouri corporation] and [the nonresident defendant] were maintained as the contracts were being drafted." *Id.* at 3. In this case, only one trip to Missouri occurred. There is no evidence of phone calls to Missouri or any correspondence sent to a Missouri physical address. On the contrary, the record indicates that, aside from the Missouri meeting, negotiations occurred either by email or in meetings outside of Missouri. Further, no Missouri entity existed at the time of the meeting in Missouri, the location of which appears to be unrelated to the substance of the negotiations or the parties involved.

4

*Morse Chevrolet, Inc.*, 44 S.W.3d 402 (Mo. Ct. App. 2001) *& Schilling v. Human Support Servs.*, 978 S.W.2d 368 (Mo. Ct. App. 1998), "[a] particular purpose [of the long-arm statute] was to confer jurisdiction over nonresidents who enter into various kinds of transactions with residents of Missouri." *State ex rel. Metal Serv. Ctr. of Georgia, Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. 1984) (en banc).

Under the circumstances here, the Court thinks it a close call as to whether the long-arm statute's requirements are met. Although brief negotiations took place in Missouri, no Missouri entity participated in the interaction. Only one short visit occurred and the subject of the negotiations was unrelated to any Missouri entity in existence at that time or asset owned by a Missouri entity. Similarly, the location of the contract's formation is unclear given the complexity of the agreements, parties, entities, and procedures involved. The Court also questions whether Lookout Holding MO can properly plead a fraud or negligent misrepresentation claim based on alleged false representations made at a meeting that occurred before its existence or that FreeStream can properly allege the reliance elements of those claims when it is at most a third-party beneficiary to the agreements involved; both of these claims hinge on the Missouri negotiation. In any event, whether or not the requirements of Missouri's long-arm statute are met, an assertion of jurisdiction must additionally comply with the United States Constitution's due process standards. While Missouri's long-arm statute is interpreted so as to accommodate any instance in which due process requirements are met, compliance with the requirements of the long-arm statute does not compel a finding that due process standards allow for jurisdiction. To the extent the breadth of Missouri's long-arm statute is coextensive with determinations that due process standards are not satisfied, the Court finds the statute's requirements are not met in this case.

5

*D.     Due Process*

The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that "in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted). A defendant has fair warning that his activity may subject him to personal jurisdiction in a particular forum "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (citations omitted).

Systematic and continuous contacts with a forum can subject a defendant to personal jurisdiction in that forum on any claim. *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 707-08 (8th Cir. 2003) (citation omitted). On the other hand, if the contacts are minimal or few, the claim must arise out of or relate to the defendant's connections with the forum state in order for personal jurisdiction to be proper. *Id.* (citation omitted). "The Supreme Court has rejected 'talismanic' formulas to personal jurisdiction." *Clune v. Alimak AB*, 233 F.3d 538, 542 (8th Cir. 2000) (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485 (1985)). The facts of each case must be weighed "to assess the nature of the contacts between the defendant and the forum state." *Id.* (*citing Rudzewicz*, 471 U.S. at 486).

6

The following factors are considered when determining whether it is proper to assert jurisdiction over a nonresident defendant:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977) (*citing Caesar's World, Inc. v. Spencer Foods, Inc.*, 498 F.2d 1176, 1180 (8th Cir. 1974)). The first three factors are of primary consideration. *Aylward v. Fleet Bank*, 122 F.3d 616, 618 (8th Cir. 1997) (citation omitted).

In this case, Defendants' contacts with Missouri are few and tenuous. Representatives of Edison and Mission Wind traveled to Missouri for less than 24 hours on one occasion. While the Court views this meeting as the most important contact related to Plaintiffs' allegations supporting jurisdiction, at the time of the meeting, Lookout Holding MO was not yet formed. At that meeting, Gardner, a Kansas resident, must have represented either himself or Generation Resources Holding Company ("GRHC"), a related Kansas limited liability company. Further, whether or not Defendants knew Lookout Holding MO was to be formed, Plaintiffs do not allege that Defendants participated in its formation or support their claim that Defendants insisted on its formation so as to constitute purposeful availment of the benefit or protection of Missouri laws. The subject of the negotiations was wind farm projects in Pennsylvania, not any Missouri-related business endeavor, asset, or entity then in existence.

Further weakening the connection to Missouri, none of Lookout Holding MO's members are Missouri residents. Only one wire transfer to a Missouri bank occurred and there is no indication Defendants directed use of that particular bank or that the choice of that bank has any particular

7

relevance to the transaction or dispute. Although Plaintiffs generally allege Defendants engaged in Missouri-related correspondence in addition to the 2006 meeting, they do not provide supporting evidence such as calls to Missouri phone numbers or relevant mail sent to a physical Missouri address.[3] Rather, it appears documents and communications were exchanged by email and those emails were sent to Gardner's GRHC email address. Even if Gardner accessed his GRHC email account from a Missouri location, Defendants had no control over whether he did so and did not direct the communications to a physical Missouri address. Finally, Mission Wind Two and Three were not in existence at the time of the Missouri meeting in 2006 and thus could not have participated in the negotiations. Those two entities are also not parties to the agreements in dispute.

Even if these contacts approach a threshold sufficient for the Court to exercise personal jurisdiction over Defendants, additional factors weigh against the proposition. While Missouri does have an interest in providing a forum for its residents, very few, if any, of the witnesses are located in Missouri and very little, if any, of the physical evidence is present here. Defendants do not anticipate any of their evidence or witnesses will originate in Missouri, and, as Defendants point out, none of Plaintiffs' members are Missouri residents and "[P]laintiffs have served subpoenas requesting documents from 11 separate third parties, none of whom are located in Missouri." (Doc. #65, p. 1). The tenuous and minimal nature of Defendants' contacts with Missouri compel a finding that Defendants did not purposefully direct their activities toward Missouri or avail themselves of

---

[3] Defendants note the communications identified by Plaintiffs and attached to the Amended Complaint were either exchanged electronically through GRHC's email address or exchanged in an attempt to resolve the present dispute. *See* exhibits B & G attached to the Amended Complaint.

the protection or benefit of Missouri's laws. Defendants' Motion to Dismiss is therefore GRANTED.

## **CONCLUSION**

In sum, the Court finds Plaintiffs have not successfully made a prima facie showing that personal jurisdiction is proper over Defendants under due process standards. Defendants' Motion to Dismiss is therefore GRANTED.[4]

**IT IS SO ORDERED.**

s/ Gary A. Fenner
Gary A. Fenner, Judge
United States District Court

DATED:   **April 17, 2009**

---

[4] Defendants' original Motion to Dismiss (Doc. #17), Plaintiffs' Motion for Partial Summary Judgment (Doc. #20), and Defendants' Motion for Extension of Time (Doc. #28) are DENIED as MOOT.